REDACTED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

-FILED-

APR 23 2026

At _____ M
Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **INDICTMENT** |
| | ) | |
| v. | ) | Cause No.  1:26-CR-42 |
| | ) | Violation:  18 U.S.C. § 1955 |
| RODNEY L. NAYLOR, | ) | |
| BRUCE NAYLOR, | ) | |
| CHAE DAVID NAYLOR, | ) | |
| JAWAUNA P. DAVIS-PARKER, | ) | |
| a/k/a Jawauna Parker, | ) | |
| MICHAEL L. CARTER, | ) | |
| DOUGLAS W. MCKINNEY, | ) | |
| CHRISTIAN R. NAYLOR, and | ) | |
| PAUL G. ROWAN, | ) | |
| a/k/a "Bingo Paul" | ) | |

## BACKGROUND

At all times material to this Indictment:

1.     The defendants operated an illegal gambling business in violation of Indiana law and Title 18, United States Code, section 1955.

2.     This illegal gambling business was located on Saint Joe Center Road, Fort Wayne, Indiana.  The defendants operated this casino in violation of the Indiana charity gaming law in Indiana Code, article 4-32.3, and Indiana criminal law in Indiana Code, chapter 35-45-5.

3.     Prior to April of 2021, defendants Rodney L. Naylor and Bruce Naylor discussed opening a casino game night with members of the Fort Wayne Benevolent and Protective Order of Elks, Lodge 155 ("BPOE 155"), a qualified

fraternal organization eligible under Indiana charity gaming law for operating a licensed casino game night.

4.    A "casino game night" and all other gambling activity was and is prohibited by Indiana law unless properly conducted by a qualified organization and appropriately licensed by the Indiana Gaming Commission ("IGC"). The IGC has the authority to issue charity gaming licenses and to regulate and supervise compliance with Indiana charity gaming activity.

5.    Although there were licenses available for different types of charity gaming, casino game night activity was licensed annually, and this license allowed the organization to conduct approved activities for a maximum of three days per calendar week at the authorized facility. This license permitted, for example, gambling in the form of card, dice, and wheel games.

6.    Indiana law required casino game night organizations to pay an annual licensing fee based on the prior year's gross receipts. Organizations were further required to record and document all gambling income and payouts and to maintain booths or tables to track all cash coming into and going out of the casino.

7.    The casino game night application and license listed "operators" and "workers" who could conduct the business of the casino. Both categories had to be members of the organization, among other qualifications, and these individuals were required to be volunteers. It was illegal under Indiana charity gaming law to pay, or even tip, an operator or worker conducting casino

game night activity. The only individuals who could receive compensation were those receiving their regular compensation from the organization or employees such as bartenders, wait staff, or security officers who were not conducting gaming activity.

8. Through their operators and workers, the organization had to track and document all funds deposited and paid out, had to document all expenses incurred, and had to record all amounts disbursed for qualified charitable purposes. Among other documents, the organization was required to provide truthful financial information on IGC reports, including the Event Summary Report ("ESR"), annual applications, and annual financial and gross receipts reports. Charity gaming records must be kept for the current year plus the three prior years.

9. Accurate and truthful documentation of financial information has been important because Indiana law required the organization to donate net proceeds of charity gaming to qualified charitable organizations. Under-reporting of gross receipts and net proceeds and failure properly to report payouts, expenses, or other financial information were violations of Indiana law. An organization receiving 90% or more of its total gross receipts from gaming activity must donate at least 60% of its gross charitable receipts, less prize payouts, to qualified charities.

10. In addition to civil and regulatory penalties, Indiana criminal law prohibited violations of the charity gaming provisions (I.C. 4-32.3-8-4) and

3

further prohibited professional gambling (I.C. 35-45-5-3) and promoting professional gambling (I.C. 35-45-5-4).

11.    From April of 2021 through September of 2024, the defendants operated the BPOE 155 Casino Game Night in violation of Indiana charity gaming law and Indiana criminal law.

12.    Starting in 2021, the defendants and others obtained a casino game night license, which was renewed annually through 2024.    The defendants were all listed on one or more of these licenses as operators or workers.

13.    The defendants failed to document properly their expenses, payouts, and other financial information, and the defendants falsified financial reports provided to the IGC.    The defendants under-reported their financial information and operated the casino for profit, illegally paying themselves, their gaming dealers, and others conducting gaming activity.    The defendants paid themselves, their dealers, and others in cash, distributed in envelopes, and failed to abide by federal and state tax laws.

14.    Although the BPOE 155 donated money to charity, the defendants flouted the Indiana charity gaming laws to conceal the true nature of their illegal gambling business, which resulted in a significantly lower amount of charitable donations than otherwise required.    The defendants also deceived the City of Fort Wayne about the true nature of their casino business, resulting in the approval of a zoning variance for the casino facility.

15. In December of 2023, the IGC's Charity Gaming Division suspended Rodney L. Naylor and Bruce Naylor for charity gaming violations. Despite their suspensions prohibiting them from conducting casino operations, they nevertheless continued to conduct and manage the casino.

16. Rodney L. Naylor and Bruce Naylor owned, financed, and managed the illegal gambling business. Chae David Naylor and Christian R. Naylor conducted and supervised the illegal gambling business's operation. Jawauna P. Davis-Parker, aka Jawauna Parker, and Michael L. Carter functioned as pit bosses and managed dealers and gaming tables. Douglas W. McKinney signed charity gaming applications and documents on behalf of the BPOE 155 and was responsible for overseeing the purported charity casino after the suspensions of Bruce Naylor and Rodney L. Naylor. Paul G. Rowan conducted and managed the exchange of gambling chips and cash, and he was responsible for working the cage area. All of these defendants illegally accepted compensation for charity gaming activity and improperly enriched themselves financially through the operation of the illegal gambling business.

17. In September of 2024, the IGC conducted an audit of the purported charity casino, and the defendants deliberately engaged in conduct designed to minimize the gross receipts and net proceeds of the casino. Despite these efforts, the audit further demonstrated that there was significant under-reporting to the IGC.

**THE GRAND JURY CHARGES:**

## COUNT 1

### Illegal Gambling Business

Paragraphs 1 through 17 are re-alleged and incorporated by reference as if fully set forth herein.

Beginning in or about April of 2021 and continuing through in or about September of 2024, in the Northern District of Indiana,

RODNEY L. NAYLOR,
BRUCE NAYLOR,
CHAE DAVID NAYLOR,
JAWAUNA P. DAVIS-PARKER,
a/k/a Jawauna Parker,
MICHAEL L. CARTER,
DOUGLAS W. MCKINNEY,
CHRISTIAN R. NAYLOR, and
PAUL G. ROWAN,
a/k/a "Bingo Paul",

defendants herein, and others known and unknown to the Grand Jury, did knowingly and intentionally conduct, finance, manage, supervise, direct, and own all or part of an illegal gambling business, which gambling business operated in violation of the laws of the State of Indiana, including Indiana Code article 4-32.3, Indiana Code chapter 35-45-5, and Indiana Code sections 4-32.3-8-4, 35-45-5-3, and 35-45-5-4, and which involved five or more persons who conducted, financed, managed, supervised, directed, and owned all or part of said illegal gambling business, and which remained in substantially

6

continuous operation for a period in excess of thirty days and had a gross revenue of $2,000 in any single day;

All in violation of 18 U.S.C. § 1955.

## FORFEITURE ALLEGATION

The allegations contained in this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §§ 1955(d) and 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Upon conviction of the offense in violation of 18 U.S.C. § 1955 set forth in this Indictment, the defendants shall forfeit to the United States of America any property, including money, used in violation of the provisions of this section.

Upon conviction, the government will seek a money judgment in the amount of proceeds used or received in this offense.

If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the existence of due diligence;
    b. has been transferred or sold to, or deposited with a third party;
    c. has been placed beyond the jurisdiction of the court;
    d. has been substantially diminished in value; or
    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute

8

property pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

A TRUE BILL

_____/s/ Foreperson_____
Foreperson


ADAM L. MILDRED
UNITED STATES ATTORNEY

/s/ Anthony W. Geller/Dawn R. Ransom
By:    Anthony W. Geller/Dawn R. Ransom
       Assistant United States Attorney

9